## PROGRESS PRESS BRICK & MACHINE COMPANY v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

### Division One, June 28, 1913.

**RAILROAD: Easement Over Tracks: Obstruction: Condition Subsequent.** Where a railroad company by deed sold to a brick company certain property and "permission to cross over its railroad tracks, at or near Scanlon avenue, with the privilege to drive over its land lying between Fyler avenue and Scanlon avenue, until such time as a street or highway may be established and opened in that vicinity across its railroad, thereby giving and securing to said brick company as direct and convenient ingress and egress to and from the property hereby conveyed as is hereby granted," it could not obstruct said easement by fencing its tracks until a street or highway was established and opened in the vicinity, and a street which secured to the brick company "as direct and convenient ingress and egress" to and from its property as the right of way conveyed; and the construction of a bridge over its tracks at Fyler avenue, which required the brick company to travel about eight hundred feet further in hauling its brick to market, was not a compliance with the subsequent condition. The construction of an elevated bridge is not equivalent to the establishing and opening of a street. Nor is the longer route, with a steeper grade, "as direct and convenient."

Appeal from St. Louis City Circuit Court.—*Hon. George C. Hitchcock,* Judge.

Affirmed.

*Jones, Hocker, Hawes & Angert* for appellant; *W. F. Evans* and *Vincent L. Boisaubin* of counsel.

(1)   In construing a clause in a deed the principal object to be arrived at is the intention of the parties; and. in order to ascertain the true meaning, the court will consider all the facts and circumstances attending the execution of the deed. Bank v. Kennett Est., 101 Mo. App. 388; Lakeman v. Railroad, 36 Mo. App. 371;

17 Am. & Eng. Ency. Law, 21, 22; Devlin on Deeds, secs. 836, 836a, 837, 839. (2) The trial court erred in entering the decree in favor of respondent and in overruling appellant's motion for a new trial on the ground that the judgment and decree is against the evidence and the weight of the evidence. While this court will defer to the findings of the trial court in equity cases, it will not be concluded thereby but will make its own findings in accordance with the weight of the evidence. Derry v. Fielder, 216 Mo. 195; Huffman v. Huffman, 217 Mo. 241. The evidence, properly considered, warrants, and could only warrant a decree for defendant denying the relief asked and dismissing the bill. (3) Unless the plaintiff's right is clear and certain, the court will not enforce specific performance or what amounts to specific performance. 26 Am. & Eng. Ency. Law, 32; Wendover v. Baker, 121 Mo. 293; Mastin v. Halley, 61 Mo. 200; Mueller v. Fire Ins. Co., 45 Mo. 84; Strange v. Crowley, 91 Mo. 294; Tribune Pub. Co. v. Assoc. Press, 83 Fed. 357; Pomeroy on Contracts, sec. 159; Fry on Spec. Perf., sec. 152; Strang v. Railroad, 93 Fed. 75; Stanton v. Singleton, 126 Cal. 157, 47 L. R. A. 334; Zeringue v. Railroad, 34 Fed. 243. (4) Even assuming that the contingency terminating the easement has not occurred, yet a court of equity will not decree specific performance (or an injunction amounting to specific performance), to enforce a mere technical right, if the enforcement of such right would be attended with great detriment to the defendant and with but little benefit to the plaintiff. A court of equity will, in granting an injunction, balance the equities and weigh the benefits to accrue therefrom against the disadvantages which will result from the refusal thereof. Bank v. Kennett Est., 101 Mo. App. 395; Christian v. St. Louis, 127 Mo. 115; Bailey v. Culver, 84 Mo. 539; Shubert v. Woodward, 167 Fed. 60; Bliss v. Mining Co., 167 Fed. 365; 26 Am. & Eng. Ency. Law, 66.

*Schnurmacher & Rassieur* for respondent.

(1) The easement sold and granted by defendant to plaintiff, for a valuable consideration, was the right "to cross over its railroad tracks, at or near Scanlan avenue, with the privilege to drive over its land lying between Fyler avenue and Scanlan avenue, until such time as a street or highway may be established and opened in that vicinity," etc. The principal thing granted was the right to cross at Scanlan avenue; the incidental thing granted was the right to drive over the intervening land, to reach Scanlan avenue; the easement to cross is to continue until a street or highway shall be established and opened in the vicinity of the place of crossing; that is, at or near Scanlan avenue. (2) Though, as a matter of fact, no new street or highway has been established in the vicinity of Scanlan avenue between October 22, 1902, and August 1, 1908, yet if the erection of the bridge be treated as a new street or highway, the trial judge, sitting as a chancellor, and seeing and hearing the witnesses, found that the crossing of defendant's tracks and right of way by means of such bridge was neither as direct nor as convenient as by way of the road described in the deed. While it is true that in equity cases this court is not concluded or bound by the findings of fact of the chancellor, it nevertheless defers largely to them and generally accepts such findings where, as here, the evidence is conflicting. Fifer v. McCarty, 243 Mo. 42; Albright v. Stephenson, 227 Mo. 333. (3) The doctrine that a court of equity, in an application for an injunction, will balance the rights of the parties, has no application where the interest sought to be protected is based on contract or statute. "The extent of the injury is vital when a nuisance, unrelated to contractual rights, is the gravamen of the action; but if parties settle their rights in regard to a parcel of land by covenants, these must be observed,

whether their non-observance will inflict injury or not." Bank v. Kennett Estate, 101 Mo. App. 370; Sullivan v. Steel Co., 208 Pa. St. 540; Commonwealth v. Railroad, 24 Pa. St. 159; Dickerson v. Canal Co., 15 Beav. 260; Sanders v. Dickson, 114 Mo. App. 229; Paddock v. Somes, 102 Mo. 226.

WOODSON, P. J.—Bill in equity, begun in the circuit court of the city of St. Louis, by the plaintiff, to enjoin the defendant from obstructing and interfering with the former's easement or right of way across the latter's railroad track at or near Scanlan avenue in the city of St. Louis.

A trial was had which resulted in findings and a decree for plaintiff, enjoining the defendant from further obstructing said way; and after defendant's motion for a new trial was overruled by the circuit court, the latter duly appealed the cause to this court.

The facts are few and practically undisputed. The plaintiff is a corporation organized and incorporated under the laws of this State, and is engaged in the manufacture and sale of brick in said city.

The plant of the plaintiff is located in the southwestern portion of the city, near the river Des Peres, on the west side of said railway track, near the western end of Scanlan avenue. Said track, in that vicinity, runs in a southeasterly and northwesterly direction, and then runs practically east and west. Scanlan and Fyler avenues run east and west, with Bradley avenue between and paralleling them.

The right of way across the defendant's tracks was obtained by plaintiff from defendant, for a valuable consideration by a deed in regular form, dated October 22, 1902. It conveyed to plaintiff a certain tract of real estate situate in said city, lying immediately south of Fyler avenue, together with the afore-

251 Mo.—39

said right of way. The latter grant was expressed in the following words.

"The said party of the first part also grants unto the party of the second part, its successors and assigns, permission to cross over its railroad tracks at or near Scanlan avenue, with the privilege to drive over its land lying between Fyler avenue and Scanlan avenue, until such time as a street or highway may be established and opened in that vicinity across its railroad, thereby giving and securing to them as direct and convenient ingress and egress to and from the property conveyed as is hereby granted."

The deed was executed in behalf of defendant by Mr. C. H. Beggs, its vice-president; and the evidence showed that Mr. Beggs, together with Mr. C. D. Purdon, defendant's engineer, conducted the negotiations which resulted in this deed and grant, and that the conveyance itself was prepared by counsel for defendant upon instructions from Mr. Beggs.

The evidence showed that on or about August 1, 1908, defendant obstructed plaintiff's right of way by placing barriers along the sides of its tracks at or near Scanlan avenue and by maintaining cars at that point and by removing the materials which formed the driveway across the tracks; and that defendant threatened, notwithstanding a demand on the part of plaintiff that it cease so doing, to continue such obstruction and interference.

Defendant admits that on October 22, 1902, "plaintiff purchased and acquired from defendant, for use in its business of manufacturing, selling and dealing in brick, that certain piece, parcel or tract of land lying and being in the city of St. Louis, Missouri, described in plaintiff's petition, and that in connection with the purchase and acquisition of said piece of property, plaintiff also acquired from defendant permission to cross defendant's railroad tracks, at or near Scanlan avenue and Fyler avenue in said city." Also

that plaintiff gave defendant a valuable considera-
tion for said property and for said easement and that
it executed and delivered to plaintiff the deed above
referred to.

Defendant further admits that on or about Au-
gust 1, 1908, or at some time prior thereto, it ob-
structed plaintiff in the exercise of said easement and
that it still continues so to do, "thereby preventing
plaintiff from driving across the same."

In justifying its conduct in obstructing plaintiff's
easement, the answer pleads that, pursuant to an ordi-
nance of the city of St. Louis, defendant received per-
mission and authority from the city to carry Fyler
avenue over its tracks, by the erection of a bridge,
with suitable abutments and retaining walls, and that
said bridge was opened at some time prior to August
1, 1908, and that by means of such bridge plaintiff is
afforded "direct and convenient ingress and egress to
and from its said property."

The evidence shows that prior to October, 1902,
the defendant had formulated plans for using this
tract of land for yard and roundhouse purposes; also
that Fyler avenue and Frisco avenue, the latter par-
alleling defendant's track on the east, were at all
times mentioned, public streets duly established and
used as such; and that on Fyler avenue crossing
planks had been laid between the rails of defendant's
tracks and on the outside thereof, for the purpose of
facilitating vehicles in crossing the same at that
point.

From October 22, 1902, the date when plaintiff
acquired said right of way over defendant's tracks,
the physical situation in the vicinity under considera-
tion had not changed a particle until up to August 1,
1908, the date when the defendant obstructed said
way of the plaintiff, except in the meantime the
former had erected an elevated bridge over Fyler
avenue, in pursuance to the ordinance mentioned in

the answer, which was opened to travel about August 1, 1908.

The distance from plaintiff's plant to its easement or way across the defendant's tracks, at Scanlan avenue, was considerably shorter than was the distance to the elevated bridge, constructed by defendant at Fyler avenue; the witnesses testified, from two to five blocks; also that distance nearer the market for its brick. The grade of the road to the Scanlan crossing, the easement right of way, was a much better and easier grade than the one leading to. Fyler avenue crossing, notwithstanding one short, steep grade in the former. It was generally used by the teamsters, because of that fact, and because it was the more convenient route.

The survey of this route, made by Julius Fitzman, an engineer, together with the profile drawings on the same, show that the drive over the bridge is not only longer, but a long, steep grade, practically all the way, and less convenient for plaintiff.

I. The right of way sold by defendant to the plaintiff was the right "to cross over its railroad tracks, at or near Scanlan avenue, with the privilege to drive over its land lying between Fyler **Easement Over Railroad: Distinction.** avenue and Scanlan avenue, until such time as a *street or highway may be established and opened in that vicinity* . . . thereby giving and securing to them as direct and convenient ingress and egress to and from the property," etc.

By this reading the terms of the grant of the right of way it will be seen that it is impressed with a condition subsequent composed of two provisions, namely: first, that it should continue until such time as a street or highway might be *established* and opened in that *vicinity;* and, second, thereby giving and securing the plaintiff as *direct and convenient* ingress and

egress to and from its property, as the one conveyed to plaintiff by said deed of October 22nd, 1902.

The question before us for determination is, has this condition subsequent been fulfilled? If that question is to be answered in the affirmative, then the decree of the circuit court enjoining the defendant from obstructing the right of way of the plaintiff must be reversed and the bill dismissed; but if it is to be answered in the negative, then the decree of the circuit court must be affirmed.

We will consider the two elements of the condition in the order stated.

Attending the first: Has a street or highway been *established and opened* in that vicinity since the grant was made?

That question must be answered in the negative. In fact, there is not a scintilla of evidence preserved in this record tending to show that fact; but upon the contrary the undisputed evidence conclusively shows that the physical conditions in that vicinity had not changed a particle since the date of the grant of the way to plaintiff down to the date of its obstruction by the defendant, except the latter constructed an elevated bridge over its tracks at Fyler avenue, which the greater weight of the evidence shows was about eight hundred feet out of plaintiff's way in hauling its brick to market.

The construction of this bridge is the only shadow of justification defendant makes for obstructing plaintiff's way, and that is made upon the theory that the building of said elevated bridge was equivalent to the establishment and opening of a highway within the terms of the grant of the way to plaintiff.

That contention is wholly untenable. The construction of the bridge was neither in the letter nor spirit of the grant.

We therefore decide this against the defendant.

II. Regarding the second question previously stated: It is only necessary to state that we have carefully read all the evidence bearing upon that question, and find from the greater weight of the evidence, as the circuit court found, that the construction of the elevated bridge at Fyler avenue did not give plaintiff a "direct and convenient ingress and egress to and from its property," as was the one conveyed to it by the deed of October 22, 1902.

That is almost conclusively shown by the fact that the teamsters generally use the Scanlan avenue route in preference to the bridge route.

Moreover, the survey and drawings made by Mr. Fitzman, a competent engineer, showing the physical conditions and supported by the weight of the testimony of the eye-witnesses, leaves but little doubt as to the fact that the granted way was much more direct and convenient for the plaintiff than was the bridge route; and we therefore answer the second question in the negative.

Entertaining these views, we are of the opinion that the findings and decree of the circuit court were correct, and should be affirmed.

It is so ordered. All concur.